UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
────────────────────

№ 16-CV-01553 (CBA)(RER)
────────────────────

FEDERAL EXPRESS CORPORATION,

Petitioner,

VERSUS

JETEX AIR EXPRESS INC. ET AL,

Respondent.
────────────────────

**REPORT & RECOMMENDATION**

January 26, 2017
────────────────────

TO THE HONORABLE CAROL BAGLEY AMON,
SENIOR UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

Federal Express Corp. ("FedEx") commenced this action against JetEx Air Express Inc. ("JetEx Air") and Swingline International, Inc., ("Swingline") (collectively "Defendants") on March 30, 2016, alleging that Defendants' use of their JetEx Logo constitutes: (1) trademark infringement in violation of Section 32 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114, and New York common law; (2) unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), New York General Business Law ("GBL") §349, and New York common law; and (3) service mark dilution in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and GBL § 360. Defendants have failed to appear or file a timely answer. On May 11, 2016, the Clerk of the Court entered default against Defendants. (Dkt. No. 21). FedEx now moves for default judgment and seeks a permanent injunction as well as attorney's fees and costs for a total of $25,000. (Dkt. No. 24). FedEx seeks an additional $5,000 to satisfy an unpaid judgment from a prior related action. Your Honor has referred this motion to me for a report and recommendation. (*See* Docket Entry dated 09/15/2016). For the following reasons, I respectfully recommend that a permanent injunction be issued against

1

Defendants and that FedEx be awarded damages in the amount of $25,000.

## BACKGROUND

FedEx is a corporation organized under the laws of the State of Delaware with its principal place of business in Memphis, Tennessee. (Dkt. No. 1 (Complaint, ("Compl."), ¶ 3). Fedex provides a wide range of transportation, delivery, and shipping services to customers around the world. *Id*. The FedEx brand is represented by the FedEx Logo, an internationally recognized mark that is protected by a number of federal trademark registrations. *Id*. ¶ 13, Exhibit A. The FedEx Logo is often depicted in distinct color combinations with an uppercase "F" and "E" and an arrow symbol imbedded in the negative space between the "E" and "x." *Id*.

Defendants are also providers of transportation, delivery, and shipping services within New York. *Id*. ¶ 9. JetEx Air is a New York corporation formed on July 24, 2015, with its registered address and principal place of business at 145 Hook Creek Boulevard, Building A7, Valley Stream, New York, 11581. *Id*. ¶¶ 4-5. Swingline is a New York corporation formed on February 10, 2014, with its registered address at 147 57 Farmers Boulevard, Jamaica, New York, 11434. *Id*. ¶ 5. In addition, Swingline's principal place of business is 145 Hook Creek Boulevard, Building A7, Valley Stream, New York, 11581, the same address as JetEx Air's principal place of business. *Id*. ¶¶ 4-5.

In providing their goods and services, both Defendants employ the JetEx Logo. *Id*. ¶¶ 18-19. The JetEx Logo is strikingly similar to the FedEx Logo. *See id*. It is often depicted in red and blue or similar color combinations used in the FedEx Logo. *Id*. ¶¶ 14, 24. Moreover, the JetEx Logo uses a font that is similar to the FedEx Logo. *Id*. As such, the "J" and the "E" in the JexEx Logo are both uppercase letters. *Id*. Although not fully enclosed, the JetEx Logo also has an arrow device imbedded into the negative white space between the "E" and the "x" portion of the logo. *Id*.

On August 6, 2013, FedEx filed a related lawsuit in this Court against defendants JetEx Management Services and JetEx Express, alleging that their use of the JedEx logo and the slogan "Keeping the World on Time" infringed several of FedEx's trademarks. *See Federal Exp. Corp. v. JetEx Mgmt. Services, Inc.*, No. 13-cv-4431 (CBA)(RER), 2014 WL 4628983 (E.D.N.Y. Sept. 15, 2014) ("Original Action"). This Court found those Defendants liable for trademark infringement, unfair competition, deceptive acts, and trademark dilution. *Id*. Consequently, this Court enjoined those Defendants (hereinafter "the Enjoined Jetex Defendants") from using the JetEx logo and slogan for commercial purposes and awarded FedEx $5,000 in attorney's fees and costs. *Id*. at *7. That judgment remains wholly unsatisfied. (Compl. at ¶17).

In or around Fall 2015, FedEx became aware that Defendants were using vehicles that displayed the same JetEx Logo used by the Enjoined JetEx Defendants. *Id*. ¶¶ 1, 18-19. Upon learning about the JetEx Logo's continued use, FedEx informed Defendants of the Permanent Injunction Order issued by this Court against the Enjoined JetEx Defendants in the Original Action; FedEx requested that Defendants comply with said order and "stop infringing [FedEx]'s trademarks." *Id*. ¶ 20; (Dkt. No. 24-2, ("Filosa Decl."), ¶ 3.) To date, neither set of Defendants has complied with FedEx's request. (Compl. ¶¶ 27–28; Filosa Decl. ¶ 3).

On March 30, 2016, FedEx commenced the instant action, alleging that Defendants' willful use of the JetEx logo constitutes: trademark infringement under

2

the Lanham Act and New York common law; unfair competition under the Lanham Act, New York General Business Law, and New York common law; and trademark dilution under the Lanham Act and GBL § 360. (Compl. ¶ 30-46). Although properly served with a copy of the summons and complaint (Dkt. Nos. 18-19), Defendants have failed to appear or file a timely answer. On May 11, 2016, the Clerk of the Court entered default against Defendants. (Dkt. No. 21). On, July 29, 2016, FedEx submitted a motion for default judgment against Defendants, seeking: a permanent injunction, attorney's fees and costs amounting to $25,000, and an additional $5,000 to satisfy the prior judgment. (Dkt. No. 24 at 17).

FedEx further alleges that Defendants are "successors in interest to, alter egos of, or related to" the Enjoined JetEx Defendants. *Id.* ¶ 1. Supporting this notion, FedEx notes that Swingline's registered address is the same address from which the Enjoined JetEx Defendants operated their businesses. *Id.* ¶ 5. FedEx also notes that Swingline and JetEx Air have the same principal place of business at 145 Hook Creek Boulevard, Building A7, Valley Stream, New York, 11581. *Id.* ¶¶ 4-5).

## DISCUSSION

### I. Defendants' Liability

By defaulting, Defendants have admitted all well-pleaded allegations of liability. *Greyhound Exhibitgroup, Inc. v. E.L.I.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).

### A. Trademark Infringement

To establish trademark infringement, FedEx must establish "legally protectable trademarks and that the defendant[s'] use of the trademarks creates a likelihood of confusion among consumers." *United Airlines, Inc. v. United Airways, Ltd.*, No. 09–CV–4743 (KAM) (JMA), 2013 WL 1290930, at *6 (E.D.N.Y. March 4, 2013) (citing *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006); *Gruner Key Number Symbol Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir.1993)).

FedEx owns several federal trademark registrations for its logo and slogan, (*see* Compl. Ex. A), establishing prima facie validity, ownership, and the exclusive right to use the registered mark in commerce. 15 U.S.C. § 1115(a).

The Second Circuit looks to eight nonexclusive factors to determine the likelihood of confusion: "(1) the senior mark's strength; (2) the degree of similarity between the marks; (3) the proximity of the services; (4) the likelihood that the senior user will enter the same market as the junior user (i.e., bridge the gap); (5) actual confusion generated by the junior mark; (6) whether defendant adopted the junior mark in good faith; (7) the quality of the defendant's product; and (8) consumer sophistication." *United Airlines, Inc.*, 2013 WL 1290930, at *6 (citing *Polaroid Corp. v. Polarad Elec Corp.*, 287 F.2d 492, 495).

The well-pleaded allegations set forth the robust strength of the FedEx mark in the United States and throughout the world. (*See* Compl. ¶ 13). In addition, FedEx sufficiently alleges that Defendants provide services that are "similar to and which compete with FedEx's Services." *Id.* ¶¶ 3, 5. Further, FedEx establishes the "striking similarity" between the FedEx and the JetEx marks, (*compare id.* ¶¶ 14, 19 *with id.* Exhibit. A), a finding that this Court also made in the Original Action. *See Federal Exp. Corp. v. JetEx Mgmt.* (CBA) (RER), 2014 WL 4628983 at * 2.

3

Although the allegations in the Complaint do not touch upon all of the *Polaroid* factors, I am satisfied that FedEx has established a likelihood of confusion based on Second Circuit precedent and my related decision in the Original Action. Accordingly, FedEx should prevail on its trademark infringement claim.

## B. Unfair and Deceptive Acts

FedEx asserts federal and state unfair competition claims and a deceptive acts claim under GBL § 349. The standards for unfair competition claims under federal and New York law are the same as those governing trademark infringement claims under the Lanham Act, "except the common law [unfair competition claim] requires a showing of bad faith or intent." *PepsiCo, Inc. v. F&H Kosher Supermarket, Inc.*, No. 11–CV–0425 (RRM) (ALC), 2011 WL 6181907, at *6 (E.D.N.Y. Aug. 26, 2011) (citing *Louis Vuitton Malletier*, 454 F.3d at 114)). Moreover, courts apply "substantially the same [standards] as those applied to claims brought under the New York common law for unfair competition" and the GBL § 349. *Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 800 (S.D.N.Y. 1997) (citations omitted).

The well-pleaded allegations establish that Defendants acted with bad faith or intent. (Compl. ¶¶ 25-31.) FedEx alleges that upon learning that Defendants were operating trucks identical to those of the Enjoined JetEx Defendants, it contacted Defendants and sent letters and copies of the Court's Permanent Injunction Order from the Original Action. *Id*. ¶¶ 17-20. FedEx also alleges that when it called the Defendants, they directed FedEx to speak to their attorney, whom they nevertheless refused to identify before ending the telephone call. *Id*. ¶ 20.

FedEx thus establishes that Defendants acted "willfully and with knowledge of the FedEx Logo Trademark and the Court's Permanent Injunction Order." *Id*. ¶ 28. FedEx also establishes that Defendants "were and are aware of the valuable goodwill and business reputation associated with those trademarks," and that Defendants "with intent to confuse, continue to mislead and deceive the public into believing their goods and services [come] from FedEx or that they [are] in some manner associated with or endorsed by FedEx." *Id*. FedEx therefore establishes that Defendants "have unfairly competed with FedEx…and profited from their use of the FedEx Logo Trademark." *Id*. ¶ 28.

As FedEx has established Defendants' liability for trademark infringement as well as Defendants' bad faith and deceptive conduct, the Court finds that FedEx should prevail on its unfair competition and deceptive acts claims.

## C. Trademark Dilution

FedEx asserts claims for trademark dilution pursuant to § 43(c) of the Lanham Act and GBL § 360. To establish federal trademark dilution, FedEx must show that "(1) its mark is famous, (2) the defendant uses the mark in commerce, (3) the defendant uses the mark after the mark was famous, and (4) such use will likely dilute the mark's quality by blurring or tarnishment." *United Airlines, Inc.,* 2013 WL 1290930, at *7 (citing *Pepsico, Inc.*, 2011 WL 6181907, at *6.) The fourth factor considers "the similarity between defendant's mark and the famous mark, the distinctiveness and degree of recognition of the famous mark, and whether defendant intended to create an association with the famous mark." *Id*. (citing 15 U.S.C. § 1125(c)(2)(B)). Similarly, to establish Defendants' liability under GBL § 360(1), FedEx must demonstrate that "it

4

owns a distinctive mark whose dilution is likely." *Id.* (citing *Express Cubana del Tabcao v. Culboro Corp.* 399 F.3d 462, 485-86 (2d Cir. 2005)).

The well-pleaded factual allegations establish Defendants' liability for trademark dilution under federal and state law. FedEx alleges that the FedEx Logo Trademark is "inherently distinctive, as demonstrated in part by the granting of federal trademark registrations," (Compl. ¶ 22), and that the trademark "acquired fame and distinctiveness well before any use" by Defendants. *Id*. ¶ 21. FedEx also asserts that it "has extensively used, advertised and promoted the FedEx Logo Trademark throughout the United States and in foreign countries in connection with its goods and services," which has allowed the FedEx Logo Trademark to become "favorably known throughout the United States and foreign countries." *Id*. ¶ 23. Finally, FedEx has established that Defendants are diluting FedEx's brand and endangering the valuable fame and goodwill that FedEx has developed by "mislead[ing] and deceiv[ing] the public into believing that [Defendants'] goods and services came from FedEx or were in some manner associated with or endorsed by FedEx." *Id. ¶* 28.

FedEx has established each necessary requirement for a trademark dilution claim. Accordingly, this Court finds that FedEx has established liability for trademark dilution under both federal and New York law.

### D. Liability for the Enjoined JetEx Defendants

FedEx alleges that Defendants are "the successors in interest to, have common ownership with, are the alter egos of, or are related to the Enjoined JetEx Defendants." *Id*. ¶ 7. In support, FedEx states that Swingline's registered address, at 147 57 Farmers Boulevard, Jamaica, New York, 11434, is the same address from which the Enjoined JetEx Defendants operated their businesses. *Id*. ¶ 5.[1] FedEx also states that Swingline and JetEx Air both have their principal place of business at 145 Hook Creek Boulevard, Building A7, Valley Stream, New York, 11581, a location that is about 3 miles away from the principal place of business of the Enjoined JetEx Defendants. *Id*. ¶¶ 4, 5, 18.

The Court finds that FedEx has failed to establish successor or alter ego liability sufficiently to hold the Defendants liable for the judgment against the Enjoined JetEx Defendants. The Court will examine each theory of liability in turn.

### 1. Successor Liability

The Court begins with the successor liability theory. Successor liability is a question of state law. *Software Freedom Conservancy, Inc. v. Best Buy Co*. No. 09 CIV 10155 SAS, 2010 WL 4860780, at *2 (S.D.N.Y. Nov. 29, 2010). To assess successor liability, a court must first determine that a party is, in fact, a successor

---

[1] FedEx mistakenly alleges that the Enjoined JetEx Defendants, JetEx Management Services, Inc., and Jet Ex Express, Inc., have the same principal place of business as the registered address of JetEx Air, which is 147 57 Farmers Boulevard, Jamaica, New York, 11434. (Compl. ¶ 8). Based on earlier parts of the Complaint, the Enjoined JetEx Defendants' principal place of business is actually the same as Swingline's registered address. Nevertheless, because FedEx's well-pleaded allegations establish the registered address and principal place of business for the Defendants, the Court will consider the Enjoined JetEx Defendants' and Swingline's common business location as a factor for assessing Defendant's liability for the prior judgment.

5

in interest.[2] *See id*. Most often, "a successor in interest may be a person or entity who acquired the particular interest at stake in the litigation, such as a certain piece of property or a contractual right, or who acquires all of the assets and liabilities of a party to the litigation." *Id.* (citing *Koehler v. Bank of Bermuda Ltd*., No. M18-302, 2002 WL 1766444 (S.D.N.Y. July 31, 2002)). The key feature of a legal successor is the transfer of ownership or other legal interests. Even with a valid transfer of ownership, however, the corporation that acquires the assets of another corporation is generally *not* liable for the seller's liabilities. *N.Y. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 204-05 (2d Cir. 2006) (emphasis added).[3]

FedEx never alleges in its Complaint that the Defendants acquired *any* of the Enjoined JetEx Defendants' legal interests. FedEx does not allege that there was any continuity of management, personnel, ordinary business operations, or shareholders. (*See generally* Compl.). Nor does it describe any sale that took place between the entities, any transfers of stock, or any explicit or implicit agreements between the former and present entities. *Id*.; *see O'Connor v. 11 West 30th St. Rest. Corp.,* Nos. 94 Civ. 2951 (LMM) 1995 WL 354904 (S.D.N.Y.1995) (finding that defendant "impliedly agreed to assume [predecessor corporation's] liabilities by paying its arrears in rent" and therefore was successor liability under debt-assumption and mere-continuation theories). FedEx also does not detail the manner in which the Enjoined JetEx Defendants ceased their operations or the manner in which the Defendants commenced their operations.

All that FedEx provides to support its successor liability theory is information on suspect timing and location. Specifically, FedEx establishes that Swingline has its registered address at 147 57 Farmers Boulevard, Jamaica, New York, 11434, which is the same address from which the Enjoined JetEx Defendants operated their businesses. (Compl. ¶ 5). FedEx also establishes that it has seen identical trucks to those operated by the Enjoined JetEx Defendants in a parking lot about 3 miles away from the principal place of business of the Enjoined JetEx Defendants. *Id*. ¶ 18; *cf. Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 289 (E.D.N.Y. 2007) (finding that defendants were successors where plaintiffs showed: that there was an agreement between the two companies, that the defendants were the main owners or investors in both companies, and that the defendants knew about their predecessor's debts and made their business decisions accordingly).

The Court finds FedEx's scant information insufficient to establish that the

---

[2] Black's Law Dictionary defines a successor as a "corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." BLACK'S LAW DICTIONARY 1473 (8th ed.2004).

[3] New York law recognizes four common-law exceptions to the general rule that an asset purchaser is not responsible for the seller's liabilities. A buyer of a corporation's assets will be liable as its successor if: (1) it expressly or impliedly assumed the predecessor's liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations *Ortiz v. Green Bull, Inc.*, No. 10-CV-3747 ADS ETB, 2011 WL 5554522, at *5 (E.D.N.Y. Nov. 14, 2011) (quoting *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir.2003)). Because this Court finds that FedEx has insufficiently pled that Defendants are successors in interest to the Enjoined JetEx Defendants, the Court will not analyze whether any of these exceptions is applicable.

Defendants are the legal successors to the Enjoined JetEx Defendants.

### 2. Alter Ego Liability

Determining alter ego liability requires the Court to pierce the corporate veil. Under New York law, a court may pierce the corporate veil where 1) "the owner exercised complete domination over the corporation with respect to the transaction at issue," and 2) "such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir.1997).

The Second Circuit has instructed courts to consider many factors in the veil-piercing inquiry, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir.1997).

Here, FedEx has only proffered facts that supports one of the ten factors in this inquiry: "(5) common office space, address, *and* telephone numbers of corporate entities."

*Id*. (emphasis added). However, all that FedEx has provided are facts that reveal the common address between one of the present Defendants and the Enjoined JetEx Defendants. This information is not even sufficient to satisfy the sole factor that is implicated, as FedEx did not allege that any parties shared a common phone number. (*See generally* Compl.); *cf. NYKCool A.B. v. Pacific Intern. Services, Inc.*, 2013 WL 1274561, at *2 (S.D.N.Y. 2013) (finding that because the plaintiff provided ample evidence supporting each of the 10 factors, the plaintiff successfully pierced corporate veil to hold the defendants liable for a prior judgment entered against related companies).

The Court finds that FedEx has not plead sufficient facts to pierce the corporate veil and show that the Enjoined JetEx Defendants: "exercised complete domination over the [present Defendants] with respect to the transaction at issue" and that "such domination was used to commit a fraud or wrong that injured the party," both of which are necessary for alter ego liability. *Am. Fuel Corp. v. Utah Energy*, 122 F.3d at 134.

\*   \*   \*

Accordingly, the Court recommends finding that the Defendants are not liable for the Enjoined JetEx Defendants' unpaid judgment.

### II. Damages

While a defendant's default constitutes an admission of liability, a plaintiff must still prove damages. *See Greyhound*, 973 F.2d at 158. "Although the court must assure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." *Fustok v.*

7

*Conticommodity Servs., Inc.*, 873 F.2d 38 (2d Cir. 1989).

The allegations set forth in the complaint establish Defendants' liability as a matter of law for: trademark infringement in violation of Section 32 of the Lanham Act and New York common law; unfair competition in violation of § 43(a) of the Lanham Act, GBL §349, and New York common law; and service mark dilution in violation of § 43(c) of the Lanham Act and GBL § 360.

This Court wields considerable discretion in determining FedEx's entitlement to injunctive and compensatory relief, fees and costs. *See Fustok*, 873 F.3d at 40. In exercising this discretion, the Court must ensure that there is a proper basis to enter judgment for the requested relief. *Tamarin v. Adam Carterers, Inc.*, 13 F.3d 51, 54 (2d. Cir. 1993 (trial courts have the discretion to select the "necessary and proper" mechanism(s) to determine damages). Although trial courts may "conduct hearings or make referrals," they need not do so where a plaintiff specifies a reasonable basis for the damages sought. Fed. R. Civ. P. 55(b)(2); *Finkel v. Romanowicz*, 577 F.3d 79, 87 (2d Cir. 2009).

By defaulting, Defendants admit that damages were proximately caused by their conduct. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 69–70 (2d Cir. 1981). Consequently, FedEx must prove only "that the compensation sought relates to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159. FedEx has supplied sufficient documents and affidavits for the Court to determine the proper injunctive, and compensatory relief.

### 1. Injunctive Relief

FedEx seeks a permanent injunction enjoining Defendants from using the JetEx logo for commercial purposes. The Court may issue an injunction on a default judgment if the plaintiff demonstrates that it is entitled to injunctive relief under the applicable statute and it satisfies the prerequisites for the issuance of an injunction. *PepsiCo,Inc.*, 2011 WL 6181907, at *7 (citing *Yash Raj Films (USA), Inc. v. Adda Rong, Inc.,* No. 08–CV–2280 (CBA) (VVP), 2010 WL 1270013, at *7 (E.D.N.Y. Mar. 12, 2010)).

Section 34(a) of the Lanham Act authorizes courts to issue injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable" to protect the rights of the trademark registrant. *See* 15 U.S.C. 1116(a). A permanent injunction is warranted where a party succeeds on the merits, *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006), and demonstrates:

> (1) that it has suffered irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (quoting *eBay, Inc. v MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Because the well-pleaded allegations in the complaint establish Defendants' liability under the Lanham Act, FedEx has achieved success on the merits. *PepsiCo, Inc. v. F & H Kosher Supermarket, Inc.*, 2011 WL 6181907, at *7; *see also Rolex Watch U.S.A. v. Rolex Deli Corp.*, No. 11–CV–9321 (BSJ), 2012 WL 5177517, at *5 (S.D.N.Y. Oct. 18, 2012).

8

As to irreparable harm, the record establishes that without a permanent injunction Defendants will continue to infringe the FedEx marks, and such conduct is likely to mislead the public and damage the FedEx brand. Such harm is irreparable in that it is both "difficult to replace [and] difficult to measure." *Salinger*, 607 F.3d at 81.

Further, FedEx has demonstrated the lack of an adequate remedy at law. Defendants ignored FedEx's demands to cease and desist from their illegal conduct and failed to defend against this lawsuit. Defendants' default gives rise to the inference that they are "willing to, or may continue [their] infringement." *Sexy Hair Concepts, LLC v. Sexy Hair Inc.*, No. 12–CV–3937 (ARR) (MDG), 2013 WL 5460629, *4 (E.D.N.Y. Sept. 30, 2013) (quotation marks and citation omitted). Further, FedEx complains of harm to its reputation and goodwill, a type of injury that is difficult to quantify. *See Philip Morris USA Inc. v. U.S. Sun StarTrading, Inc.*, No. 08–CV–0068 (KAM) (JO), 2010 WL 2133937at * 17 (E.D.N.Y. Mar. 11, 2010), *adopted by*, 2010 WL 2160058 (E.D.N.Y. May 27, 2010); *see also Broadcast Music, Inc. v. Bayside Boys, Inc.*, No. 12–CV–03717 (CBA) (VMS), 2013 WL 5352599, at *7 (E.D.N.Y. Sept. 23, 2013). ("Monetary damages awarded after the fact do not provide an adequate remedy in a case such as this where the actual loss caused by the infringement cannot be measured precisely.").

These reasons tip the balance of hardships in favor of FedEx. Moreover, absent an injunction, FedEx faces the threat of irreparable harm to the reputation and goodwill associated with the FedEx logo and slogan. FedEx has already expended a considerable amount of money in trying to protect its marks. (*See* Filosa Decl. (breaking down FedEx's expenditure of nearly $60,000 on trademark litigation for this case alone)); *see also Federal Exp. Corp. v. JetEx Mgmt. Services, Inc.*, 2014 WL 4628983). Without an injunction, FedEx would be required to expend additional resources to monitor Defendants for further infringement of its marks. *See Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 164 (E.D.N.Y. 2013).

Further use of the JetEx logo and slogan is likely to mislead, deceive, and confuse the public into believing their goods and services came from FedEx, or that they were in some way associated with or endorsed by FedEx. Thus, an injunction would promote the welfare of the public, which has "an interest in not being deceived-in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *Hilton v. Int'l Perfume Palace*, No. 12–CV–5074 (JFB) (GRB), 2013 WL 5676582, at *13 (E.D.N.Y. Oct. 17, 2013) (internal quotation marks and citation omitted).

As FedEx has established its entitlement to an injunction under the Lanham Act and relevant case law, I respectfully recommend that the Court enter the following Order, as proposed by FedEx:

1. Defendants JetEx Air Express Inc. and Swingline International Inc., their officers, agents, servants, employees, attorneys, parents, subsidiaries and related companies, and all persons acting for, with, by, through or under them having notice of this Injunction, are permanently enjoined from:

(a) using in any manner the JetEx Logo or any other logo, trademark, designation, image, phrase, slogan or term likely to cause confusion with the FedEx Logo Trademark on any

9

goods or services, or in connection with the advertising or promotion of their goods or services;

(b) using in any manner the JetEx Logo in connection with Defendants' goods or services;

(c) otherwise engaging in any other acts or conduct which could cause consumers to erroneously believe Defendants' goods or services are somehow sponsored by, authorized by, licensed by, or in any other way associated with Plaintiff; and

(d) from displaying, using, or continuing to use any vehicles, including, but not limited to, the following vehicles, which display, contain, use, or depict the JetEx Logo:

(Dkt. No. 23-2 ¶ 10) (images omitted). Additionally, the Court recommends that Defendants be required to file with the Court and serve on FedEx, within thirty days from the date of entry of final judgment, a report under oath detailing the manner in which they have complied with all terms of this injunction, with supporting photographic and documentary evidence. *See id.* ¶ 5; *see also Cheesecake Factory Assets Co. LLC v. Philadelphia Cheese Steak Factory Inc.*, No. 05–CV–3243 (NGG) (RML), 2008 WL 2510601, at *2 (June 20, 2008) (ordering a compliance report within thirty days).

### 2. Attorney's Fees and Costs

FedEx seeks a judgment in the amount of $30,000, for which it claims that $25,000 represents damages, reasonable attorney's fees, and costs of this action, and $5,000 represents the unpaid judgment against the Enjoined JetEx Defendants. (*See*

Dkt. No. 24-1, ("Bishop Decl."), ¶ 11.) An award of attorney's fees under the Lanham Act is reserved only for "exceptional cases," 15 U.S.C. § 1117(a), where for example, there is "willful infringement." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003) (quotation marks omitted). Such an award nonetheless remains within the court's discretion. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194 (2d Cir.1996); 15 U.S.C.A. § 1117(a).

As discussed at-length, the record establishes Defendants' willful infringement, and the Defendants' default constitutes an admission of all legal allegations. *See* Part I.B., *supra*. FedEx has also submitted contemporaneous time records and invoices to substantiate its attorney's fees. (*See* Dkt. Nos. 24-2, Filosa Decl., Exhibit A, Exhibit B; Dkt. No.24-3, ("Kaplan Decl."), ¶ 3).

The Court therefore recommends awarding FedEx attorney's fees and the costs of pursuing this action. *Protection One Alarm Monitoring, Inc. v. Exec. Protection One Security Serv., LLC.*, 553 F. Supp. 2d 201, 205–06, 207–11 (E.D.N.Y. 2008) (awarding permanent injunction and attorney's fees and costs on default judgment). Although the Court would normally undertake an exhaustive review of the reasonableness of FedEx's attorney's fees request under Second Circuit precedent, such a full-blown analysis is unnecessary here because while the rates and hours expended by counsel for FedEx are higher than what the Court finds is necessary for initiating an action that is so similar to the Original Action, FedEx seeks less than half of the $56,620.50 that it owes to its attorneys. (*See* Dkt. Nos. 24-2, Filosa Decl., Exhibit A, Exhibit B; Dkt. No.24-3, ("Kaplan Decl."), ¶ 3). *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 188–90 (2d. Cir. 2008), (holding that district courts are to award attorney's fees based on

10

their determination of reasonable rates for attorneys within their districts and the affidavits provided). I therefore find FedEx's request for attorney's fees to be reasonable.

As to costs, by the express terms of 15 U.S.C. § 1117(a), FedEx is entitled to recover its litigation costs of $690, which include $400 filing fees and $290 process server fee.

The Court finds the $25,000 request for the total of litigation costs and the attorney's fees incurred by three attorneys and a paralegal, each with experience ranging from eight years to thirty years, to be reasonable. (*See id*. ¶ 1; Kaplan Decl. ¶ 4; Bishop Decl. ¶ 2). Accordingly, the Court recommends awarding FedEx a total of $25,000 in attorney's fees and costs.

## **CONCLUSION**

For the reasons set forth herein, the Court recommends that FedEx's motion for default judgment be granted and that a permanent injunction be jointly issued against Swingline and JetEx Air. The Court also recommends that FedEx be awarded a total of $25,000 for attorney's fees and costs. FedEx is hereby directed to serve copies of this report and recommendation upon Defendants by next-day mail by February 1, 2017 at each of their last known addresses, and to promptly file proof of service with the Clerk of the Court.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and The Honorable Carol Bagley Amon within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989).

SO ORDERED.

*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: January 26, 2017
Brooklyn, NY

11